# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DANIEL FITZGERALD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Docket No. 2:14-cv-00053-NT |
| ) | |
| CITY OF PORTLAND, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Before the Court is the Defendants' motion to dismiss the Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 41). For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The Plaintiffs in this action are Daniel Fitzgerald, Marguerite Fitzgerald, in their own right and as next of kin to minor children, L.M.F., J.P.F., and Leslie Sneddon (the "**Plaintiffs**"). The Defendants are the City of Portland, Michael F. Brennan, Kevin J. Donoghue, David A. Marshall, Edward J. Suslovic, Cheryl A. Leeman, John R. Coyne, Jon C. Hinck, Nicholas M. Mavodones, Jr., and Jill C. Duson (the "**Defendants**").

On November 18, 2013, the Portland City Council voted 9-0 to enact an ordinance titled "Access to Reproductive Health Care Facilities" (the "**Ordinance**"). *See* Portland, Me., Code § 17-108-112 (2013) (repealed July 7, 2014). The Ordinance prohibited anyone other than clinic visitors, employees, law enforcement, passers-by,

and public-transit users from entering within thirty-nine feet of any reproductive health care facility ("**RHCF**") in Portland. *Id.* at § 17-110. The Ordinance affected a single RHCF, run by Planned Parenthood of Northern New England, located in downtown Portland. The stated purpose of the Ordinance was "to balance both the fundamental right to assemble peacefully and to demonstrate on matters of public concern, with the right to seek and obtain reproductive health care services." *Id.* at § 17-108(e).

The Ordinance was modeled after a Massachusetts law passed in 2007, titled "An Act Relative to Public Safety at Reproductive Health Care Facilities" (the "**Massachusetts Act**"). *See* Mass. Gen. Laws, ch. 266 § 120E ½ (2014), *invalidated by McCullen v. Coakley*, 134 S. Ct. 2518 (2014), *repealed by* 2014 Mass. Legis. Serv. Ch. 197 (S.B. 2283) (West). The Massachusetts Act withstood repeated constitutional challenges in the District of Massachusetts and the First Circuit. *See McCullen v. Coakley*, 573 F. Supp. 2d 382 (D. Mass. 2008) (denying facial challenge to the Massachusetts Act); *McCullen v. Coakley*, 571 F.3d 167 (1st Cir. 2009) (affirming denial of facial challenge); *McCullen v. Coakley*, 759 F. Supp. 2d 133 (D. Mass. 2010) (dismissing all but one as-applied challenge to the Massachusetts Act); *McCullen v. Coakley*, 844 F. Supp. 2d 206 (D. Mass. 2012) (dismissing remaining as-applied challenge to the Massachusetts Act); *McCullen v. Coakley*, 708 F.3d 1 (1st Cir. 2013) (affirming dismissal of as-applied challenges).[1] Some of the *McCullen* plaintiffs

---

[1] *See also McGuire v. Reilly*, 260 F.3d 36 (1st Cir. 2001) (rejecting a facial challenge to an earlier version of The Massachusetts Act); *McGuire v. Reilly*, 386 F.3d 45 (1st Cir. 2004) (rejecting renewed facial challenges and as-applied challenges to the same).

appealed, and on June 24, 2013, the Supreme Court granted certiorari. *See McCullen v. Coakley*, 708 F.3d 1 (1st Cir. 2013), *cert. granted*, 81 U.S.L.W. 3557 (U.S. June 24, 2013) (No. 12-1168).

On February 12, 2014, with *McCullen v. Coakley* still pending before the Supreme Court, Plaintiffs initiated the present action by filing a complaint (the "**Original Complaint**") (ECF No. 1) claiming that the Ordinance, on its face and as applied, violated rights guaranteed by the First and Fourteenth Amendments of the Constitution. On March 10, 2014, Plaintiffs filed an amended complaint (the "**Amended Complaint**") (ECF No. 16) and a motion for a preliminary injunction enjoining enforcement of the Ordinance (ECF No. 17). Shortly thereafter, the Defendants filed a motion to stay the case pending a ruling from the Supreme Court (ECF No. 21).

In April of 2014, the Defendants filed a motion to dismiss the Amended Complaint ("**MTD I**") (ECF No. 23) as it pertained to each of the individually-named City Council members (the "**Individual Defendants**" or the "**City Council Members**"), asserting that they were entitled to qualified immunity. The Defendants argued that notwithstanding the Supreme Court's grant of certiorari, when the City Council Members voted to pass the Ordinance, they were acting pursuant to valid First Circuit authority upholding the similar Massachusetts Act regarding buffer zones around reproductive health care centers. MTD I 5 (citing *McCullen v. Coakley*, 708 F.3d 1 (1st Cir. 2013)).

This Court denied the Defendants' motion to stay the case on May 28, 2014 (ECF No. 33). The Supreme Court held on June 26, 2014, that the Massachusetts Act was not narrowly tailored to serve a significant governmental interest, and therefore violated the First Amendment. *See McCullen v. Coakley*, 134 S. Ct. 2518 (2014). At that time, this Court had not yet ruled on the Plaintiffs' Preliminary Injunction Motion or the Defendants' Motion to Dismiss I.

In response to the Supreme Court's *McCullen* ruling, the City Council met on July 7, 2014 and voted to repeal the Ordinance, effective immediately. *See* July 8, 2014 Aff. of Katherine L. Jones (ECF No. 41-1); Portland City Council Order 10-14/15 (ECF No. 41-2). The Defendants now move to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6),[2] asserting that the City Council's repeal of the Ordinance has rendered all issues before this Court moot and that Plaintiffs have no remaining claims upon which relief may be granted. Defs.' Mot. to Dismiss Pls.' First Am. Compl. 3 ("**MTD II**") (ECF No. 41).

---

[2] Defendants are technically foreclosed from making a motion pursuant to Fed. R. Civ. P. 12(b) because they have already answered. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). However, Rule 12 specifically preserves the lack of subject-matter jurisdiction defense. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Thus, motions raising lack of subject-matter jurisdiction "may be considered by the court even when interposed after the responsive pleading has been filed, although technically they no longer are Rule 12(b) motions." 5C Charles Allen Wright & Arthur R. Miller, *Fed. Prac. & Proced.* § 1361 (3d ed. 2014). And, Rule 12 allows the defense of failure to state a claim upon which relief can be granted to be raised by a motion pursuant to Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2)(B).

4

## LEGAL STANDARD

### Lack of Subject-Matter Jurisdiction: Rule 12(b)(1)

"'The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *Davidson v. Howe*, 749 F.3d 21, 26 (1st Cir. 2014) (quoting *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013)). "'Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Am. Civil Liberties Union of Mass.*, 705 F.3d at 52 (quoting *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). Further, "'[i]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case.'" *Am. Civil Liberties Union of Mass.*, 705 F.3d at 52-53 (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)). The party raising mootness has the burden of establishing it. *Davidson*, 749 F.3d at 26 (citing *Am. Civil Liberties Union of Mass.*, 705 F.3d at 52).

### Motion for Judgment on the Pleadings: Rule 12(c)

A motion for judgment on the pleadings pursuant to Rule 12(c)[3] "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st Cir. 2007)). "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light

---

[3] As discussed above, *see supra* 4 n.2, the Court will apply the Rule 12(c) standard instead of the 12(b)(6) standard, as the present motion was made after the filing of a responsive pleading.

5

most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006) (internal citations omitted). In assessing a Rule 12(c) motion a "court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." *Id.* To withstand a Rule 12(c) motion, "a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . .'" *Perez-Acevedo*, 520 F.3d at 29 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In sum, "to survive a motion for judgment on the pleadings, the complaint must state a claim that is plausible on its face." *Pineiro v. Gemme*, 937 F. Supp. 2d 161, 168-69 (D. Mass. 2013) (citing *Twombly*, 550 U.S. at 570).

## DISCUSSION

The Defendants argue that because the challenged Ordinance is no longer in effect, Plaintiffs have received the relief they sought, and there is no longer any controversy for this Court to decide. MTD II 2-3. Plaintiffs counter that: (1) they suffered harm when they were prohibited from exercising their First Amendment rights throughout the existence of the Ordinance; (2) the City Council's repeal of the Ordinance has not rendered their requests for declaratory relief or nominal damages moot; and (3) the voluntary cessation exception prevents mootness where the City

6

Council is likely to enact a similar ordinance in the future. Pls.' Resp. to Defs.' Mot. to Dismiss 2, 4-6 ("**Pls.' Resp.**") (ECF No. 42).[4]

I.   **Claims Against the City**

   A.   **Equitable Relief**

The City Council's repeal of the Ordinance has rendered Plaintiffs' claims for injunctive and declaratory relief moot. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) (mooting challenge to a since-altered regulation); *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002) (mooting challenge to a former permitting policy and observing that "it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status."); *D.H.L. Assocs., Inc.*, 199 F.3d at 54-55 (mooting claims for injunctive and declaratory relief on former versions of an ordinance); *see also Am. Civil Liberties Union of Mass.*, 705 F.3d at 53-54 (explaining that a controversy must be "immediate" and "real" for declaratory relief to withstand a mootness challenge). As the Supreme Court has instructed, federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). Indeed, "[a] declaratory judgment on the validity of a repealed ordinance is a textbook example of 'advising what the law would be upon a hypothetical state of facts.'" *Nat'l. Adver. Co. v. City &*

---

[4] Plaintiffs also assert that Defendants' MTD II ignores the costs and attorneys' fees Plaintiffs have incurred in this action. *See* Pls.' Resp. 2. Defendants counter that awards of attorneys' fees and costs are discretionary, and that any decision regarding fees and costs in this case is premature, where Plaintiffs have neither prevailed nor made an appropriate motion. *See* City of Portland's Reply to Pls.' Resp. to Mot. to Dismiss 2-3 n.1 ("**Defs.' Reply**") (ECF No. 43). Defendants are correct that consideration of an award of attorneys' fees and costs is premature.

7

*Cnty. of Denver*, 912 F.2d 405, 412 (10th Cir. 1990) (quoting *Blinder, Robinson & Co., Inc. v. U.S. S.E.C.*, 748 F.2d 1415, 1418 (10th Cir. 1984)) (mooting claims for injunctive and declaratory relief on a since-repealed ordinance, but allowing a damage claim under § 1983 to proceed).

Contrary to the Plaintiffs' assertions, the voluntary cessation exception does not save their claims for equitable relief from mootness. As the First Circuit has explained, this exception exists to target "a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Am. Civil Liberties Union of Mass.*, 705 F.3d at 54-55 (internal citations omitted). "The exception, to be invoked, also requires some reasonable expectation of recurrences of the challenged conduct." *Id.* at 55. The voluntary cessation exception is "highly sensitive to the facts of a given case."[5] *Id.* at 56 (internal citation omitted).

Some City Council Members did express reluctance in repealing the Ordinance and indicated a desire to identify alternative polices to protect individuals seeking healthcare services. Ex. 1 to Pls.' Resp. ("**City Council Meeting Tr.**") (ECF No. 42-1). For example, one member stated:

---

[5] The Defendants assert that the voluntary cessation exception applies to a lesser extent in cases involving public officials. MTD II 6 (citing *Fed'n of Adver. Indus. Representatives v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003)). The First Circuit has not adopted this approach. *See Am. Civ. Liberties Union of Mass.*, 705 F.3d at 56 n.10 ("[W]e do not join the line of cases holding that when it is a government defendant which has altered the complained of regulatory scheme, the voluntary cessation doctrine has less application unless there is a clear declaration of intent to re-engage."). The *American Civil Liberties Union of Mass.* court did, however, find the fact that the defendants were government officials who made a policy decision to adopt a new, "concededly constitutional" practice weighed against applying the voluntary cessation exception. *Id.* at 56.

> I think this council made the right decision when it took action several months ago. . . . [W]e listened to people. I think this council feels very strongly about this issue. I don't agree with the Supreme Court, but that doesn't mean too much tonight. I will vote to repeal the ordinance. I feel very strongly . . . should this pass, and I suspect it will, that we come back very quickly with something that does meet muster and does provide the protection for people who want health services.

City Council Meeting Tr. 22. As this comment suggests, the City Council may indeed take future action to address access to healthcare services in Portland. However, there is no "reasonable expectation of recurrences of the challenged conduct," *Am. Civil Liberties Union of Mass.*, 705 F.3d at 55, where the City Council swiftly repealed the Ordinance in response to newly decided Supreme Court precedent, and indicated a desire to enact a different, constitutionally-permissible policy in the future. This is not a case where a city revised an ordinance, but announced an intention to revive the *original* version post-suit, *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982), or where a city enacted a new, but sufficiently similar ordinance to the one challenged. *See Ne. Fla. Chapter of the Assoc. Gen. Contractors v. Jacksonville*, 508 U.S. 656, 662 & n.3 (1993).

Further, the Supreme Court granted certiorari in *McCullen v. Coakley* before Plaintiffs brought the present action. *See supra* 3. The City Council did appear motivated in part by the present lawsuit when it decided to repeal the Ordinance,[6] but it was not until the Supreme Court decided *McCullen v. Coakley* that it actually

---

[6] For example, one City Council Member stated: "It looks like we have about zero percent chance of winning in court and it's better for us to get this off the books before we suffer a loss of an ordinance that would be ruled unconstitutional and the penalties that go along with it." City Council Meeting Tr. 28.

9

did so. The City Council Meeting Transcript indicates that the City Council repealed the Ordinance to conform to newly decided Supreme Court precedent, not to evade review, secure dismissal, and reinstate the Ordinance shortly thereafter.[7] If the City Council does pass a restriction similar to the Ordinance in the future, such a constraint may be challenged on its own terms in light of appropriate legal precedent. Reading the City Council Meeting Transcript in the light most favorable to the Plaintiffs, there are no facts suggesting that the City Council will enact a subsequent *unconstitutional* ordinance. The voluntary cessation exception does not apply; Plaintiffs' claims for equitable relief are moot.

### B. Nominal Damages

A valid claim for nominal damages avoids mootness. *See Kuperman v. Wrenn*, 645 F.3d 69, 73 & n.5 (1st Cir. 2011). In *Kuperman*, the First Circuit considered a former prisoner's § 1983 claim that being forced to shave during his incarceration violated his First Amendment rights to free exercise of his religion. Because the plaintiff was no longer incarcerated, he conceded that his claims for injunctive relief were moot. *Id.* at 73. However, because he could still obtain nominal and punitive damages, his § 1983 damage claims could move forward. *Id.*[8] *See also Utah Animal*

---

[7] Multiple City Council Members acknowledged the game-changing nature of the Supreme Court's *McCullen v. Coakley* decision in explaining why they were voting to repeal the Ordinance. *See* City Council Meeting Tr. 25 ("[T]he Supreme Court decision really gives us nothing to hang our hat on in terms of a straight-up rebuttal, for lack of a better term, which is why I very reluctantly will be voting to repeal the ordinance."), 26 ("It seems the circumstances we find ourselves in pretty much require the repeal.").

[8] The *Kuperman* court also allowed the plaintiff's claim for declaratory relief to proceed:

> Because some relief is available on Kuperman's claims, they are not moot…[and] [f]or the same reason, Prison Officials' argument that Kuperman is no longer entitled to

10

*Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1258-59 (10th Cir. 2004) (mooting claims for injunctive and declaratory relief regarding an expired and later-amended ordinance, but finding that claim for nominal damages kept the case alive); 13C Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proced. § 3533.3 (3d ed. 2014) ("A valid claim for nominal damages should avoid mootness.").

Defendants argue that Plaintiffs could only be entitled to nominal damages if they had alleged a due process violation, because nominal damages are only appropriate for infringements on due process rights, not First Amendment rights. Defs.' Reply 2. The Defendants are incorrect. In *Cortes-Reyes v. Salas Quintana*, 608 F.3d 41, 53 (1st Cir. 2010), the First Circuit chose not to overturn an (albeit unchallenged) award of nominal damages for a First Amendment violation. In so doing, the *Cortes-Reyes* court noted that several circuits have held that nominal damages are appropriate for First Amendment violations, in addition to procedural due process violations. *Id.* at 53 n.15 (collecting cases). Courts in this circuit have since entertained nominal damage claims for constitutional violations beyond due

---

declaratory relief is beside the point. Our question is whether Kuperman can obtain some relief, and he can. Therefore, his claims are not moot.

*Id.* at 73. The *Kuperman* decision, wherein the court allowed a claim for declaratory relief to proceed even though the plaintiff was no longer affected by the relevant policy, appears inconsistent with the principle articulated in the cases cited above, *see supra* 7 (holding that where a challenged legislative act is no longer in effect, claims for injunctive and declaratory relief are moot). However, in *Kuperman*, the relevant policy was still in effect, and the court did not appear to place emphasis on parsing out the claim for declaratory relief where monetary claims were clearly still "live." A recent decision from this circuit confirms that both injunctive and declaratory relief related to claims regarding conditions of confinement become moot when a prisoner is released from custody. *See Ford v. Bender*, ---F.3d---, 2014 WL 4744669, at *10 (1st Cir. Sept. 24, 2014) ("Once released from custody, Ford lost any legally cognizable interest in a declaration that the DOC's actions had been unconstitutional or an injunction related to his prior confinement."). *Kuperman* notwithstanding, dismissal of the request for declaratory relief is the correct result in this case.

11

process, including for First Amendment violations. *See Kuperman*, 645 F.3d at 74-77 (proceeding to the merits of former prisoner's claim for nominal damages under § 1983, including for First Amendment violations); *Pineiro v. Gemme*, 937 F. Supp. 2d 161, 175-76 (D. Mass. 2013) (proceeding to the merits of a claim for nominal damages under § 1983 for violations of Second Amendment right to bear arms and Fourteenth Amendment right to equal protection); *Rodriguez-Melendez v. Fortuno-Burset*, No. 10-2044, 2011 WL 3442471, at *5 (D.P.R. Aug. 8, 2011) (declining to dismiss prisoner's nominal and punitive damages claim for Eighth Amendment violations).[9]

---

[9] Defendants also point out that Plaintiffs have yet to establish any violation of constitutional rights, and that without the deprivation of such rights, the Court may not award nominal damages. Defs.' Reply 3. In this order, the Court is deciding only whether: (1) it retains jurisdiction; and (2) whether the pleadings state any plausible claim. *See supra* 4-6 ("Legal Standard"). Plaintiffs need not *establish* the violation of a constitutional right at this juncture, they need only point to facts in their Amended Complaint sufficient to raise a non-speculative right to relief. Plaintiffs have met this burden by alleging that they were prohibited from exercising their First Amendment rights on a public sidewalk in downtown Portland. *See* Am. Compl. Any decision on the merits of Plaintiffs' constitutional claim is premature.

In addition, Defendants contend that: (1) there was no constitutional violation prior to the Supreme Court's *McCullen v. Coakley* decision because "the Plaintiffs' First Amendment rights were not infringed, pursuant to the existing, precedential case law"; and (2) that "[o]nly if the City had continued to enforce its Ordinance *after* the Supreme Court's *McCullen* decision could the Plaintiffs claim their rights had been violated." Defs.' Reply 3. These assertions raise questions not presently before this Court, including whether actions taken pursuant to existing precedent may insulate a municipality from liability where qualified immunity is unavailable, *see Owen v. City of Independence*, 445 U.S. 622, 651 (1980), and whether there is any "de minimis" exception to constitutional violations that would foreclose relief for the two weeks that the Ordinance continued in force after the Supreme Court decided *McCullen v. Coakley*.

The Court notes as well that in a conference following the *McCullen* decision, Defendants' counsel stated that the City had "not voluntarily stopped enforcement of the ordinance." July 1, 2014 Telephone Conference Tr. 4 (ECF No. 40). Plaintiffs' counsel asserted that her clients had not entered the buffer zone post-*McCullen*, and were "still abiding by the law… [and] still being harmed." July 1, 2014 Telephone Conference Tr. 4. Regardless of whether any of the Plaintiffs actually entered the buffer zone in the time between the *McCullen* decision and the repeal of the Ordinance, Defendants' counsel's statement during this conference may have had a chilling effect. Further, Defendants' counsel's assertion regarding enforcement during this conference contradicts the statement in Defendants' brief suggesting that they did not enforce the Ordinance post-*McCullen*. *See* Defs.' Reply 3.

As the Supreme Court has recognized, nominal damages serve an important function in the protection of constitutional rights. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed . . . ."). A nominal damage award allows a plaintiff who cannot demonstrate a compensable injury, but has nonetheless suffered a constitutional violation, to vindicate that harm in court. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (holding that a plaintiff who achieves nominal damages is a "prevailing party" under 42 U.S.C. § 1988). Plaintiffs' § 1983 claim for nominal damages for violations of their First Amendment rights is not moot.[10]

On the one hand, it may seem an anomalous result that a claim for declaratory relief can be moot, while a claim for nominal damages, which requires a court to make a determination as to constitutional injury, survives. Other courts have similarly observed this apparent incongruity. *See, e.g. Utah Animal Rights Coal.,* 371 F.3d at 1257; *see also Boston's Children First v. City of Boston*, 395 F.3d 10, 16-18 (1st Cir. 2005) (analyzing whether an award of nominal damages necessarily included a finding of a constitutional violation); 13C Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proced. § 3533.3 (3d ed. 2014) ("The very determination that nominal

---

[10] Defendants cite *Arizonans for Official English v. Arizona*, 520 U.S. 43, 70 (1997) for the proposition that courts should carefully examine claims for nominal damages asserted solely to avoid mootness. Defs.' Reply 2. However, in that case the plaintiff extracted a claim for nominal damages from a general prayer for relief in the complaint, first raised the claim late in the litigation, and "asserted [the claim for nominal damages] solely to avoid otherwise certain mootness." *Id.* at 71. The case at bar is distinguishable, most notably because Plaintiffs clearly requested nominal damages from the outset of the litigation. *See* Original Compl. 20 ("Award Plaintiffs nominal damages against all Defendants for all 42 U.S.C. 1981 [sic] claims as set forth in this Complaint."); *accord* Am. Compl. 20.

13

damages are an appropriate remedy for a particular wrong implies a ruling that the wrong is worthy of vindication by an essentially declaratory judgment."). On the other hand, this result is appropriate here, where the parties do not need any prospective relief from this Court regarding the constitutionality of the since-repealed Ordinance, but Plaintiffs have plausibly alleged a past constitutional harm capable of vindication.

## II. The Individual Defendants

Plaintiffs no longer have any live claims against the Individual Defendants. Although Plaintiffs' seek nominal damages from "Defendants" generally in their Amended Complaint 20, Plaintiffs have since repeatedly clarified that they are *not* seeking damages from the Individual Defendants. Instead, Plaintiffs are only pursuing equitable relief from the Individual Defendants.[11] As described above, because the City Council has repealed the Ordinance, all claims for injunctive and declaratory relief are moot. *See supra* 7-9. Therefore, all claims against the Individual Defendants are likewise moot.[12]

---

[11] *See* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss Pls.' First Am. Compl. Against the Individually Named Defs. 2 (ECF No. 28) ("Plaintiffs do not seek money damages from the individually named defendants but seek injunctive and declaratory relief."); Pls.' Resp. 3 ("Plaintiffs have only argued that they are not seeking monetary damages against the individually named Defendants in their individual capacities . . . .").

[12] In connection with MTD I, the City asserted that the Individual Defendants are entitled to qualified and legislative immunity. Reply to Pls.' Opp'n to Defs.' Mot. to Dismiss 3 (ECF No. 29). Because all claims against the Individual Defendants are now moot, the Court does not address these arguments.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss with respect to the claims against Michael F. Brennan, Kevin J. Donoghue, David A. Marshall, Edward J. Suslovic, Cheryl A. Leeman, John R. Coyne, Jon C. Hinck, Nicholas M. Mavodones, Jr., and Jill C. Duson; **GRANTS** Defendants' motion to dismiss with respect to the requests for injunctive and declaratory relief against the City of Portland; and **DENIES** Defendants' motion to dismiss with respect to the request for nominal damages against the City of Portland. In light of this order, Plaintiffs' Motion for Preliminary Injunction (ECF No. 17) and Defendants' Motion to Dismiss the Individual Defendants (ECF No. 23) are **DENIED AS MOOT**. The parties are directed to contact the Clerk's Office to set a scheduling conference with the Court to discuss next steps in this matter.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of October, 2014.